IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARRYL ESKRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 06 C 2375 |
| ANTHONY GRECO, MIKE DECARLO | ) | Magistrate Judge Susan E. Cox |
| and VILLAGE OF MELROSE PARK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On a June evening in 2005, a man entered a clothing boutique in Melrose Park, Illinois just before it was to close. The man demanded money and as the owner tried to run he placed a gun in her mouth and shot her. The owner initially identified plaintiff Darryl Eskridge ("plaintiff") as the man who shot her that night and he was later arrested. The charges, however, were subsequently dropped when evidence revealed another suspected assailant. Six months after the arrest, plaintiff was released from custody.

In 2006, plaintiff filed the instant action alleging two counts, a civil rights violation and false arrest/false imprisonment, pursuant to 42 U.S.C. §§ 1983 and 1985. Defendant Officers Anthony Greco ("Greco") and Mike DeCarlo ("DeCarlo") and the Village of Melrose Park (collectively referred to as "defendants") have moved the Court for summary judgment against plaintiff on both counts, pursuant to Federal Rule of Civil Procedure 56(c). The Court acknowledges that plaintiff being held without bond on the basis of these events was highly unfortunate. But because we do not find a constitutional violation we, nonetheless, must grant defendants' motion [dkt 66].

## I. Background

As required for purposes of summary judgment, the facts are presented in the light most favorable to the nonmoving party, the plaintiff.[1] On June 11, 2005, sometime between 6:30 and 7:00 p.m., Jin Choi was counting money in the cash register at her clothing boutique when two customers entered the store.[2] Another employee, Nayda Vera, was also working that night in the rear of the store dressing a mannequin.[3] The next thing Ms. Choi saw was a man pointing a gun at her.[4] He was an African-American male in his mid-thirties, about 6 feet tall.[5] He was wearing a t-shirt, a baseball cap, and dark glasses that covered his eyes and the top of his face.[6] The man demanded money from Ms. Choi and threatened to shoot her in the face.[7] Ms. Choi tried to run away but he put the gun in Ms. Choi's mouth, told her not to scream and when she screamed, he shot her.[8]

Ms. Vera did not come out from hiding in the back of the store until she heard Ms. Choi call the police.[9] Defendant DeCarlo arrived at the scene approximately five minutes later.[10] Defendant DeCarlo secured the area and briefly spoke with Ms. Choi before she was taken by ambulance to the hospital.[11] Thereafter defendant Greco arrived on the scene and both defendants took down the names of other individuals who were around and waited while the evidence technician finished his

---

[1] Citations to the record are in the following form: defendants Rule 56.1 statement is cited as DR ¶ ____; plaintiff's response to defendants' LR 56.1(a) statement is cited as PR ¶ ____ ; plaintiff's additional Rule 56.1 statements of facts is cited as PAF ¶ ___.
[2] PR ¶ ¶ 1, 3, 4; Choi Dep. 6:4-15; 7:9-24, Ex. A.
[3] Statement of Nayda Vera, June 11, 2005, Ex K of PR.
[4] PR ¶ 3.
[5] PR ¶ 6.
[6] PR ¶ 5.
[7] Choi Dep. 16:1-3, Ex. A of PR; Statement of Nayda Vera, June 11, 2005, Ex K.
[8] PR ¶ 4.
[9] Statement of Nayda Vera, June 11, 2005, Ex K of PR.
[10] DeCarlo Dep. 7:16-17, Ex. B of DR; *see also* Choi Dep. 41:11-17, Ex. A of DR .
[11] DeCarlo Dep. 9:22-23, Ex. B of DR; *see also* Statement of Nayda Vera, June 11, 2005, Ex K; PR ¶ 9.

investigation of the scene.[12] Though DeCarlo recalls that prints were attempted to be obtained - but were not recovered - the evidence technician actually determined that it was not necessary to dust for prints after he reviewed the surveillance tape of the crime.[13]

Later that evening DeCarlo and Greco both spoke with Ms. Choi at the hospital. She described the assailant and said that she had seen him in her store before.[14] Just over a week later, DeCarlo spoke with another detective who informed him that one of his confidential informants had seen the surveillance tape from the clothing boutique and identified the subject in the film as the plaintiff.[15] Before any contact was made with the plaintiff, on June 20, 2005, DeCarlo and Greco went to Ms. Choi's home, where she was still recovering from surgery, to show her a photo array.[16] The photo array included a photo of plaintiff and, though plaintiff now denies that there was a photo array at all, both defendant Greco and Ms. Choi testified to the photo array taking place.[17] At that time, Ms. Choi identified plaintiff's photo as being the man who shot her.[18] On June 23, 2005, DeCarlo arrested plaintiff at his place of employment.[19] On June 24, 2005, Ms. Choi was brought into the station for an in-person lineup.[20] Plaintiff was one of five individuals placed in the lineup and Ms. Choi again personally identified him as the man who shot her.[21] All the men in the line-up were black but the dissimilarities among the men included different heights and builds, and their ages ranged from 18 to 37 (plaintiff being 34 years old at the time).[22] Following the line-up, plaintiff

---

[12] DeCarlo Dep. 9:2-6; 12:7-13; 15:8-24, Ex. B of DR.
[13] DeCarlo Dep. 15:8-24, Ex. B of DR; Loochtan Dep. 33:7-15; 42:11-16, Ex.C of PR.
[14] DeCarlo Dep. 23:6-7, Ex. B of DR.
[15] DeCarlo Dep. 31:10-14, Ex. B of DR.
[16] Greco Dep. 35:4-6, Ex. C of DR.
[17] Choi Dep. 96:24; 97:1, Ex. A of DR; Greco Dep. 35:4-6, Ex. C of DR.
[18] Choi Dep. 96:24; 97:1, Ex. A of DR; Greco Dep. 109:6-17, Ex. C of DR.
[19] DeCarlo Dep. 34:19-21; 39:1-18, Ex. B of DR.
[20] DeCarlo Dep. 36:21-24, Ex. B of DR.
[21] Greco Dep. 109:12-17, Ex. C of DR.
[22] Ex. R of PAF.

had a conversation with the state's attorney, at which time he provided an alibi and gave the names of two individuals that were with him at the time in question.[23]

The next day, on June 25, 2005, plaintiff's bond was set and, thereafter, on July 22, 2005, plaintiff was indicted by a grand jury.[24] Plaintiff was charged with attempted first degree murder, aggravated battery with a firearm and three counts of armed robbery.[25]

On August 13, 2005, another detective from the Chicago Police Department interviewed a man named Maurice Robinson after he was arrested for a different robbery.[26] During that interview, the detective brought up the robbery that took place at Ms. Choi's Melrose Park boutique in June of that year.[27] The detective told Mr. Robinson that they had a surveillance tape from the store that showed him at the scene.[28] Mr. Robinson apparently denied it, then admitted that he was, in fact, in the store at the time.[29] According to the detective, Mr. Robinson then stated that he did not intend to shoot the woman but when he put the gun up to her face, she grabbed it and the gun discharged.[30] He then showed the detective scars from his hand where the gun injured his finger.[31]

In September or October 2005, the State's Attorney working on the case came to visit Ms. Choi at her store in Melrose Park.[32] The State's Attorney then told Ms. Choi that she had obtained a confession for the June robbery.[33] Ms. Choi was apparently shown a photograph of Mr. Robinson

---

[23]Eskridge Dep. 20:10-22; 22: 13-20; 82: 15-20, Ex. G of PR.
[24]Am. Compl. ¶¶ 19-20.
[25]Am. Compl. ¶ 20.
[26]Gladney Dep. 12:10-13, Ex. N of PR.
[27]Gladney Dep. 14:13-23, Ex. N of PR.
[28]Gladney Dep. 14:20-23, Ex. N of PR.
[29]Gladney Dep. 14:20-23, Ex. N of PR.
[30]Gladney Dep. 14:24; 15:1-6, Ex. N of PR.
[31]Gladney Dep. 15:3-5, Ex. N of PR.
[32]Choi Dep. 75:17-19, Ex. A of DR.
[33]Choi Dep. 102:19-22, Ex. A of DR.

and asked if she recognized him as the man that shot her, but Ms. Choi insisted on seeing the individual in person before she would say yes or no.[34]

Thereafter, Greco went to Cook County Jail to interview Mr. Robinson, the new suspected perpetrator of the June 2005 robbery.[35] Greco never saw the confession the State's Attorney had obtained from Mr. Robinson and, during his interview, Mr. Robinson denied committing the crime at the Melrose Park boutique.[36]

On January 11, 2006, plaintiff was released from custody after the Assistant State's Attorney made a motion *nolle prosequi*, dismissing the charges against him.

## II. Standard for Summary Judgment

To prevail on a motion for summary judgment under Federal Rule of Civil Procedure 56, a party must present evidence that demonstrates the absence of a genuine issue of material fact.[37] The party seeking summary judgment must identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes shows an absence of a genuine issue of material fact.[38] The moving party is not required to disprove the opponent's case but, rather, must establish a lack of evidentiary support for the non-moving party's position.[39] Summary judgment is appropriate where the evidence "'would require a directed verdict for the moving party.'"[40] With respect to claims under 42 U.S.C. § 1983, the Court need only address whether Defendants are protected by qualified immunity if the Court finds, as a threshold matter, that the facts when viewed in the light most favorable to plaintiff establish that his

---

[34] Choi Dep. 75-77, Ex. A of DR.
[35] PR ¶ 62.
[36] PR ¶¶ 64, 72.
[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[38] *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp.*, 477 U.S. 324.
[39] *Celotex Corp.*, 477 U.S. at 325.
[40] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).

constitutional rights were violated.[41]

### III. Previous Motions to Strike

As an initial matter, the Court takes up defendants' arguments to strike certain responses submitted by plaintiff to its Local Rule 56.1 statement of facts and plaintiff's filing of a Rule 56.1 statement of additional facts. Though the Court denied these motions, the intention was to address these issues with the motion for summary judgment. Defendants argue that 21 out of the 72 responses to their Rule 56.1 statement of facts should be stricken because plaintiff either failed to admit or deny the paragraphs or because additional facts were improperly raised in the responses. Defendants also claim that in plaintiffs additional statement of facts, several paragraphs are merely conclusions of law or assert compounding facts rather than a short and concise statement, as required by Rule 56.1.

Without addressing each disputed fact individually, the Court generally notes that where facts were disputed the Court referred directly to deposition testimony for clarification. It should further be noted that the Court disregards plaintiff's statements that are merely conclusions of law.

### IV. Analysis

Defendant officers contend that because plaintiff's arrest was based on probable cause when Ms. Choi identified her attacker in both a photo array and in an in-person lineup, no section 1983 or false arrest claim may stand. Defendants further argue that the Village is entitled to summary judgment because plaintiff cannot establish municipal liability where there was no policy or practice of wrongdoing that amounted to deliberate indifference to the public. Plaintiff, in contrast, asserts that the evidence, when viewed in the light most favorable to him, establishes a prima facie case of

---

[41] *See Russell v. Harms,* 387 F.3d 458, 462-63 (7th Cir. 2005).

municipal liability, shows that the defendant officers had no probable cause to arrest him so they cannot claim qualified immunity from suit under section 1983 and, therefore, his false arrest claim should proceed. Specifically, in support of his claims that defendants violated his constitutional rights, plaintiff takes issue with three parts of the investigation, as outlined below.

**A.     Constitutional Claims**

Section 1983 creates a federal cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States."[42] Plaintiff claims the defendant officers violated his constitutional rights when they: (1) used his picture in a photo array and placed plaintiff in a lineup with other men that did not match his height, weight and age; (2) interviewed Ms. Choi without first finding out if she was on pain medication, and; (3) failed to interview plaintiff's alibi witnesses prior to his arrest. In addressing these arguments the Court must determine whether the defendant officers had probable cause to arrest plaintiff. But if no constitutional right was violated (*i.e.,* probable cause existed), there is no need to further inquire as to qualified immunity.[43]

"Probable cause is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest [or] false imprisonment..."[44] Probable cause exists at the time of the arrest if "'the facts and circumstances within [the arresting officers'] knowledge and of which [the officer has] sufficiently trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'"[45] The court must determine not whether the particular defendant officer had probable cause to arrest the suspect, but

---

[42] 42 U.S.C. § 1983.
[43] *Driebel v. City of Milwaulkee,* 298 F.3d 622, 637 (7th Cir. 2002).
[44] *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006).
[45] *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996)(quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964).

whether a reasonable officer could have believed that the defendant officer had probable cause.[46] Probable cause is dependant upon information known to an officer at the time, not on how things turn out.[47] Reliable information from a third person - such as an ordinary citizen - can also establish the requisite probable cause to justify arrest.[48]

In this case, the victim herself identified plaintiff as her attacker in both a photo array and in an in-person lineup. Importantly, defendant officers did not suspect plaintiff until another detective, Dantist Zimmerman, contacted defendant DeCarlo and informed him that one of his confidential informants recognized the man in the surveillance tape as plaintiff. The defendant officers did not arrest plaintiff but, rather, went to Ms. Choi's home to show her a photo array that included plaintiff. After she identified plaintiff in the photo array as the man who assaulted her, defendant officers brought plaintiff in for an in-person lineup. Then again Ms. Choi identified plaintiff as her attacker. Based on this information, a reasonable officer could have believed there was probable cause to arrest and detain plaintiff.[49] We, nonetheless, continue our analysis.

Before doing so, however, the Court must address plaintiff's recent submission of a signed affidavit from the alleged confidential informant, Naresh Patel, and his deposition transcript. Mr. Patel, in fact, denies having ever recognized plaintiff in the surveillance tape and, thus, denies ever having told Detective Zimmerman plaintiff's name. Mr. Patel's affidavit explains that three officers came to see him at his liquor store because his store had been robbed a day or so after the Melrose Boutique robbery. Mr. Patel confirms that he was shown still photos of the Melrose Boutique

---

[46]*Huffman v. Grinnell,* 880 F.Supp. 1194, 1198 (N.D. Ill., March 9, 1995).
[47]*Hebron v. Touhy,* 18 F.3d 421, 423 (7th Cir. 1994).
[48]*Huffman,* 880 F.Supp. at 1198.
[49]*See e.g., Gramenos v. Jewel Co., Inc.,* 797 F.2d 432, 439 (7th Cir. 1986)(noting that the report of an eyewitness to a crime is sufficient to authorize an arrest).

robbery but states that the man in the photo was not the man who robbed his liquor store. He also states in his affidavit that the plaintiff's name was never mentioned and that he did not believe the man in the photographs to be plaintiff. In his deposition he confirms that these statements are true.

This would otherwise be a case of dueling depositions - where facts averred by one party contradict the facts averred by the party moving for summary judgement - thus creating a fact question that warrants a denial of summary judgment.[50] But Detective Zimmerman is not a defendant in this case. The contradicting testimony submitted by both Detective Zimmerman and Mr. Patel calls into question why plaintiff became a possible suspect in the first place, but it does not change the probable cause analysis with respect to defendants. DeCarlo's affidavit and testimony states that Detective Zimmerman told him that his confidential informant had seen the surveillance footage and identified the subject in the tape as plaintiff. DeCarlo followed up on Detective Zimmerman's information by taking a photo of plaintiff to Ms. Choi's home for identification. Again, it was not until Ms. Choi identified plaintiff as her attacker that DeCarlo and Greco then had plaintiff brought in for the in-person lineup. Ms. Choi then again identified plaintiff in the lineup.

So it was only after multiple steps in the investigation - most importantly after the victim herself identified her attacker - that plaintiff was arrested and charges were brought against him. Plaintiff is now attempting, through Mr. Patel's deposition and affidavit, to link defendants' actions to a wrongful identification. But he has not shown a faulty link at the point in time when Detective Zimmerman contacted defendants with plaintiff's name. Put simply, there is no evidence that DeCarlo had any reason to doubt the information that he received from Detective Zimmerman.

Essentially there are two possibilities, either Mr. Patel is lying about what he told Detective

---

[50]*See Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003).

Zimmerman or Detective Zimmerman is lying about what Mr. Patel said to him. Either way, the Court cannot reconcile the two testimonies and, for purposes of this motion, we do not have to do so. The defendants in this case had a tip from a fellow officer that was corroborated by two identifications by the victim. On this point, the Court cannot make the leap from information purportedly received from Detective Zimmerman to the actual defendants in this case. The Court acknowledges that the evidence shows a question of fact, but not one related to these defendants.

The Court now returns to the probable cause analysis. The next question is whether "'it seems reasonable [for] the police to believe that [the putative victim or] eyewitness was telling the truth.'"[51] It follows that the plaintiff bears the burden to show unreasonableness of an officer's belief but, here, plaintiff has failed to do so with respect to his arrest.[52] To the contrary, defendant officers asked Ms. Choi to identify her attacker via two methods, both of which pointed to plaintiff. Plaintiff has not presented any reason for defendant officers to have questioned Ms. Choi's truthfulness. There was simply no reason for defendant officers to be suspicious of Ms. Choi's identification because she was the victim of the crime (the only individual to have seen the attacker) and she had no other link to the man who shot her that could have created suspicion.[53] Without a showing that Ms. Choi was somehow predisposed to falsely accusing plaintiff as her attacker, plaintiff is left with the argument that Ms. Choi must have intentionally misidentified him and that defendant officers should have known. The court in *Tangwall v. Stuckey* summarized it well when it stated that such a scenario,

> is a ludicrous proposition - if we were to accept it, the doctrine of "qualified

---

[51]*Tangwall v. Stuckey,* 135 F.3d 510, 519 (7th Cir. 1998).
[52]*See Tangwall,* 135 F.3d at 519.
[53]*Id*. (finding that suspicion is warranted when there is a significant chance the witness or victim bore a grudge against the accused).

immunity" would effectively fall by the wayside, for every "false arrest" case, by definition, involves a situation wherein the police have apprehended the wrong person.[54]

In short, because Ms. Choi identified plaintiff in the photo array and in the in-person lineup, "there was no reason to doubt her sincerity."[55] The law clearly states that "a believable victim's single identification can provide the basis for probable cause," thus a reasonable officer would have believed that plaintiff's arrest was constitutionally valid at the time.[56]

This brings us, however, to plaintiff's claim that Ms. Choi may have been on pain medication when defendant officers interviewed her and, therefore, she was not credible. But plaintiff has failed to present any evidence that, were that to have been the case, Ms. Choi was unable to answer questions or pick out her attacker from a photo array or lineup. Plaintiff does not claim that Ms. Choi was distressed, acting oddly, or even that she complained of pain when she made the positive identifications. Without more, the conclusion that plaintiff's constitutional rights were somehow violated because Ms. Choi was on pain medication (which she likely was at the time due to her physical state) has no legal basis.[57]

Plaintiff next argues that the photo array and the in-person lineup were improper because the defendant officers were unduly suggestive that the perpetrator was, in fact, included in the photo array and lineup. But there is simply no evidence that defendant officers told Ms. Choi that the man who assaulted her was certain to be in the photo array or in the lineup. Plaintiff's claim also fails under the impartial lineup argument.[58] It is true that the Constitution guarantees the right to a fair

---

[54]*Id.* at 520.
[55]*See id.*
[56]*See id.*
[57]*See Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524-25 (7th Cir. 2001)(finding probable cause where there was no indication that the witnesses were not credible or accurate).
[58]*See Hensley v. Carey,* 818 F.2d 646, 649 (7th Cir. 1987).

trial, and procedural rules protect against the introduction of evidence from unduly suggestive lineups, but only to protect the accused's right to a fair trial.[59] Here, plaintiff was never on trial. It is true that Ms. Choi described the perpetrator as an African-American male in his mid-thirties, about 6 feet tall, and the man that most closely fit that description in the lineup was plaintiff. But the police are not required "'to conduct a search for identical twins in age, height, weight, or facial features'" when putting together a lineup.[60] It is unfortunate that plaintiff was incarcerated for six months because of Ms. Choi's apparent erroneous identification but, simply put, plaintiff's section 1983 claim cannot survive only because the other men in the lineup were not exact matches to his features.

Finally, defendant officers' failure to interview plaintiff's alibi witnesses is not sufficient to support a section 1983 claim. There was sufficient probable cause for defendant officers to arrest plaintiff after Ms. Choi identified him in a photo array and, again, in an in-person lineup. That defendant officers did not heed or further investigate plaintiff's claim that alibi witnesses would corroborate his claim that he was not in the Melrose boutique at the time of the crime is of no moment in this analysis. "Criminal suspects frequently protest their innocence, and a suspect's denial of guilt generally is not enough to trigger a duty to investigate in the face of a reasonably believable witness..."[61] This rule applies even when proper police technique would have required further investigation.[62]

**B.    Conspiracy Claim**
Plaintiff's conspiracy claim, pursuant to section 1985, fails for lack of any evidentiary

---

[59] *Hensley,* 818 F.2d at 649.
[60] *Id.* at 650.
[61] *Beauchamp v. City of Noblesville, Ind.,* 320 F.3d 733, 744 (7th Cir. 2003).
[62] *Woods v. City of Chicago,* 234 F.3d 979, 997 (7th Cir. 2000).

support. Plaintiff generally asserts a conspiracy, alleging in his complaint only that defendants Greco and DeCarlo conspired to deprive plaintiff of the equal protection of the laws. To establish a section 1985 conspiracy claim, plaintiff "must show that an actual conspiracy existed (in other words, that people agreed to injure him), that its purpose was to deprive [plaintiff] of his constitutional rights, that an act was committed in furtherance of the conspiracy, and that he was injured."[63] A plaintiff also must demonstrate some "invidiously discriminatory animus behind the conspirator's actions" and show how the conspiracy was designed to interfere with certain protected rights.[64] There must be some evidence that the conspirators acted with a single plan, which may be shown through circumstantial evidence or otherwise, but it must be clear that the nature or scope of the plan was generally known to each conspirator.[65]

Plaintiff's allegation here is difficult to grasp because he has made no argument as to how defendants conspired against him or what the discriminatory animus may have been. It is possible plaintiff's claim relates to an exchange that occurred, according to plaintiff, when defendant DeCarlo heard plaintiff say that he did not commit the crime. Plaintiff testified that DeCarlo replied that maybe that was true but he was still an armed robber, to which plaintiff replied "that was 13 years ago."[66] Even assuming that this exchange took place, it does not suggest a conspiracy or that defendant DeCarlo was motivated by some form of animus.

It could also be that plaintiff believes his general allegations of inadequate police procedure are enough to support a conspiracy claim. But the Court has already found that none of the allegations against defendant officers rise to the level of deprivation of the plaintiff's constitutional

---

[63]*Alexander v. City of South Bend,* 433 F.3d 550, 556-57 (7th Cir. 2006).
[64]*Green v. Benden,* 281 F.3d 661, 665 (7th Cir. 2002).
[65]*Green,* 281 F.3d at 665.
[66]Eskridge Dep. 55:15-24, Ex. G of PR.

rights, and without any allegation of "discriminatory animus," the conspiracy claim must fail. Finally, it should be noted that it is not the Court's role to search out an argument for the plaintiff, thus, summary judgment on this claim could be granted on that basis alone.[67]

**C.      Monell Claim**

Plaintiff attempts to bring a section 1983 claim against the Village of Melrose Park based on the actions of defendant officers. Defendants challenge plaintiff's allegation that the village has a policy or custom of not adequately training or supervising its police officers. In *Monell v. Department of Social Services,* the United States Supreme Court determined that a government entity is liable under section 1983 only when "execution of a government policy or custom 'by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy'" causes the injury alleged by the plaintiff.[68] Plaintiff must, therefore, show that defendants either had a custom of poor training or supervision, or that defendants' failure to train or supervise amounted to deliberate indifference to the public.[69] Deliberate indifference can be shown either where the need for different or more training is "obvious" and the lack thereof would likely result in a constitutional violation, or where a municipality knows of a pattern of constitutional violations but fails to provide additional training.[70]

Plaintiff has not demonstrated any shortcomings in this investigation that would be indicative of a custom or policy. Plaintiff attempts to assert that, in this case, defendant officers should have continued the investigation by interviewing his alibi witnesses. But as discussed above, there was

---

[67]*See Hemsworth II v. Quotesmith.com,* 476 F.3d 487, 490 (7th Cir. 2007)(noting that in considering a motion for summary judgment, the district court is not required to "scour the record in search of evidence to defeat the motion...").
[68]*Chortek et al v. City of Milwaukee,* 356 F.3d 740, 748 (7th Cir. 2004)(citing 436 U.S. 658 (1978)).
[69]*See Alexander v. City of South Bend,* 433 F.3d 550, 557 (7th Cir. 2006).
[70]*See Canton v. Harris,* 489 U.S. 378, 388 (1989); *see also Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029-30 (7th Cir. 2006).

no obligation for defendant officers to do so nor was there a particular indication or suspicion present that would have led them to question Ms. Choi's identification of plaintiff. The general claim that defendant officers incorrectly believed that they could not interview alibi witnesses, because the state's attorney did not direct them to do so, is also not enough to show a policy or custom that amounted to deliberate indifference to the public.

Next plaintiff makes reference to the fact that defendant DeCarlo did not interview the confidential informant. Plaintiff, however, makes no further argument on this point and it would seem that there is not one to be made. Even if the confidential informant led defendant officers to plaintiff, which, however, the confidential informant denies, it was Ms. Choi's identification of plaintiff, on two occasions, that resulted in his arrest. So this fact does not evidence a custom or policy resulting in deliberate indifference due to lack of training or supervision.

Plaintiff then claims that because the police department does not maintain a policy or procedure on photo arrays, in person lineups, or interviewing alibi witnesses, his *Monell* claim should survive summary judgment. Allegations, however, about what procedures are "not in the manual hardly establish that [the village] adopted a policy or had a custom of [not interviewing alibi witnesses, using only one photograph in a photo array, or failing to follow proper lineup procedure,] or that it was indifferent to people's rights."[71] Regarding plaintiff's claim that defendants were deliberately indifferent because they showed Ms. Choi a single photo, rather than multiple photos, as is done with a photo array, is simply not supported by the record. There is no testimony that Ms. Choi was ever shown only one photo. To the contrary, testimony by Ms. Choi reveals that she was shown multiple photographs when she identified plaintiff in the photo array.[72]

---

[71] *See Alexander,* 433 F.3d at 557.
[72] Choi Dep. 63:9-11; 32:23-24; 33:1-2, Ex. A of DR.

Plaintiff's final two arguments involve Ms. Choi's possible use of pain medication when she identified plaintiff and the decision not to include Mr. Robinson in a lineup. First, plaintiff claims that defendants' failure to ask Ms. Choi whether she was taking any medication before she identified plaintiff in the photo array and lineup was an indication that the village's lack of training resulted in deliberate indifference to plaintiff. This argument was addressed above and the analysis remains the same; plaintiff has failed to show a link between defendant officers' failure to ask whether Ms. Choi was taking any pain medication and a resulting harm because, put simply, there is no evidence that Ms. Choi was unable to properly identify plaintiff, whether or not she was taking pain medication. Second, plaintiff makes a half-hearted argument that defendants should have handled their knowledge of Mr. Robinson's possible involvement in the crime differently. Plaintiff, however, fails to explain how the actions taken by defendants with respect to Mr. Robinson can be seen as a failure to train or supervise on the part of the village that amounted to deliberate indifference to the rights of the public they serve. Rather, it seems apparent that once the investigation revealed possible involvement of Mr. Robinson, defendant DeCarlo requested Mr. Robinson's records and defendant Greco went to interview him.[73] Following the alleged confession from Mr. Robinson, charges against plaintiff were then dropped. Plaintiff is barely able to show flaws in this particular investigation, much less an indication of a custom or policy of poor training or inadequate supervision. Simply put, plaintiff's *Monell* claim fails for lack of any evidentiary support.

**V. Conclusion**

There is no genuine issue of material fact as to plaintiff's section 1983 or section 1985 claims. Plaintiff has also failed to show that the village had a custom of poor training or inadequate

---

[73]DeCarlo Dep. 62:15-23, Ex. B of DR; Greco Dep. 68:12-20, Ex. C of DR.

supervision. The Court stresses again that though it is unfortunate that it took six months to unwind the evidence in this case, the claims against these defendants are not viable. Defendants are, thus, entitled to judgment as a matter of law as to both counts in plaintiff's complaint [dkt 66].

**IT IS SO ORDERED.**

**ENTERED:** February 20, 2009  _____
**Susan E. Cox**
**UNITED STATES MAGISTRATE JUDGE**